Good morning, and may it please the Court, Anne Peterson for the petitioners Kaldeep Sethi and his family, his wife Kulvinder Karsethi and their two children Hargun and Preet. If I may, I'd like to reserve four minutes for rebuttal. Really what I think we need to focus on with this case is the immigration judge's credibility finding. The immigration judge based her credibility finding on fallacies in fact, in law, and in procedure, and substantial evidence compels the conclusion that Mr. Sethi was, in fact, credible. Each of the immigration – the immigration judge replied really on three bases to support her. So this is real ID act, though. That's correct. Even under the real ID act, the immigration judge's adverse credibility finding can't stand. She relied on three bases, concluding that he was not credible. First, she found that the Mann Party letter was fraudulent, and then she found that the letter from the Gurdwara was fraudulent or inconsistent with his testimony. And third, she found that there was an inconsistency between his testimony and that of his wife. As to the Mann Party letter, she relied on a misspelling of his name. Well, is that entirely true, though? Because first, Mr. Sethi gives – he says – first he says it could be spelled both ways. Well, that's – And then when that's not flying, then he says, oh, well, it's misspelling. The immigration judge doesn't rely on his statement that it could be spelled both ways, and therefore, the court cannot confirm on that. Why did he say that? Is there any evidence in this record or any other record? I mean, the I.J. says, look, I've been doing this for a long time. I've seen a lot of these – a lot of these seat cases. I've had a lot of experience with the Akali Dalman Party, and nobody's ever spelled it this way. And I have to say, that's consistent with my experience in, you know, 11 years on this Court, is I've seen a lot of these cases with the Akali Dalman Party. Nobody's ever spelled it this way. Well, essentially, what he was doing is he was speculating as to – at the immigration judge's invitation. But is it even true that it's okay if you spell it both ways, since neither the I.J. nor us in our experience have ever seen it spelled any other way other than M-A-N-N? I don't know the answer to that question, and it's not in the record. And therefore, the – It just looks – it looks like a silly answer. It looks like sort of a stupid thing to say. Nevertheless – He then says it could be a misspelling, which is probably the right answer. Never – yes, it looks like it was a misspelling or a typographical error. You know, and irrespective of that, this Court cannot affirm on what the Respondent would like it to, that he made a statement that there was – that it could be spelled two ways, because the judge did not rely on that as a basis for her adverse credibility finding. It appears to be a typographical error. He explained that it was probably a typographical error. He came up with these explanations at the invitation of the judge to speculate as to why this document, which was created by a third party, had a misspelling. Moreover, I would note that though the Respondent points or asserts that Simranjit Singh Mann wrote this letter, there's nothing in the record to support that. Instead, Mr. Sethi had said that he – his father-in-law had gotten it from the Delhi chapter. of the Sharimani Akali Dal Mann party. So – and it looks as if the Delhi president signed it. That's what the stamp says on the bottom of it. So the assertion that Simranjit Singh Mann would not misspell his own name is kind of irrelevant and inapplicable here. Next, the immigration judge found that the letter was inconsistent with Mr. Sethi's testimony as to the date that the party was organized. And that's not really true. If you look at the record, you can see that he is asked first when the Mann party was established, and he states 1989. And then she points – the immigration judge points out that the letter says 1999. He says, well, yeah, that's when it became the Amritsar party. Now, he didn't – Well, if we accept, that's one way you could look at it. The other way you could look at it is he just was wrong, that he didn't know when the party started, right? Well, that's not what he says, though. What he says is that that's when it became the Amritsar party. So he's explaining that there was a shift in its name. The immigration judge has decided that they're two separate parties. That's not the case. Then he goes on to compare – she makes note that he then mentions the Badal party. He doesn't say that they're both subgroups of the Akali Dal Mann party. What he points out is that Mann is the president of the Amritsar party, whereas Parash is the president of the Badal party. He's making a comparison as to why those two men would be associated with their respective parties. But apparently that Mr. and Mrs. Sethi couldn't agree on when the police officers had threatened Mrs. Sethi and the children, right? So why don't those inconsistencies support the IJ's adverse credibility? For a number of reasons. First, she – well, first, the discrepancy is about what month, right? But both Mr. Sethi and Ms. Kaur Sethi testified consistently and from the outset that this happened while Mr. Sethi was in the United States and she was in India. There's objective evidence that shows – demonstrates their passports and the stamps on their passports that the only time that that could have happened is between the 26th of July and the 28th of August. Now, in Mr. Sethi's case, he's trying to remember something that happened to a third party thousands of miles away, an event that he wasn't a recipient witness to. And he works through it and he's trying to remember exactly what month it is in the timeline of, well, I was in the United States, so what month was that? And it happens pretty quickly. And he's not confronted with contrary information and then changes his answer to respond to that. Is there any – is there any suggestion in the IJ's opinion that any of this was based on demeanor evidence? There's nothing in the opinion about demeanor or nonresponsiveness. So what do we do then if there's no demeanor finding by the IJ? I think there's a path by which the statements between the Sethis are – is consistent. But the fact of the matter is that the wife does first say it was September. And it's not September. It's got to be August. And her husband first says it's July. Then he says, I've made a mistake. It's August. And he backs off on a couple of different things. So what do we do? But she does – she does first say, it happened when my husband was in America. And then they ask, you know, what month. And she goes, like, September 2006. Yeah. And then she – they said, well, your husband said August. Why do you say that? And she said, not I don't know, but I don't remember. And that could be about the date. Nobody followed up with her. The immigration didn't – she just misheard it. That's why I asked about the demeanor. Because, again, it looks to me like there's a path in which they have testified consistently, although they've had a couple of false starts. Each of them has had at least one false start. Well, again, the Court can't rely upon a demeanor finding that the judge didn't make. Right? And she didn't point to anything in their demeanor that made them appear to be not credible. And if you look at the record, they answered very quickly and assertively. There was no unresponsiveness. And they just merely were not given the opportunity that they should have to clarify. Instead, the judge misheard or assumed that she said, I don't know. Was there anything in the record to suggest if they had testified previously or was this their first time testifying? This appeared to be their first time testifying, yes. And they weren't, you know, they weren't impeached by any credible fear notes, nothing like that. Now, you pursued if mediation was a possibility on this after the executive order and that wasn't something that the government was interested in? Well, they would be, the children are, will be eligible for expanded DACA or will be eligible for DACA once they get a little bit older or expanded DACA. But then where does that leave their parents? So we've, they would really like to get, be settled. And they have a legitimate asylum claim. You know, but for the errors of the judge, they would be in a different situation. So that, you did pursue it or you didn't pursue it? We chose not to pursue it. Okay. Counsel, I am concerned about the judge's exclusion of a number of the documents. If we thought that the district, that the IJ had erred in excluding some of the documents that the SETI's offered, does that go to any of the credibility findings that the district, that the IJ made here? Does that help you? If we went back and said, you've got to admit these documents, does that help? What happens? What would happen? Well, I think there would have to be a remand so that the immigration judge could consider in the totality of the circumstances whether or not... And how's it really relevant to any of the bases for the adverse credibility? Sure, it was. One of the letters... Well, it's not obvious to me that it is. So why don't you tell us? One of the letters from Mr. Surinder Singh confirms that he, too, was arrested. He's a precipient witness. He is a member of the Shiremani Akali Dal. He confirms that Mr. SETI is a member. He confirms that Mr. SETI was the Secretary of the Gurdwara. He corroborates the corroborating document that the judge has tried to undermine. Moreover, it's a due process issue. There was no notice or opportunity. The judge didn't let anybody know that she was going to exclude all these documents and then consider them, cherry-pick them to support her adverse credibility finding. That's patently unlawful. And I think, as such, it needs to be reversed and remanded so that she can make a decision under the proper standard rather than considering only the evidence that she believes supports her adverse credibility finding. Turning to the Gurdwara letter, the reason that the judge concluded that that letter was fraudulent based on a perceived discrepancy where she did kind of what we were just talking about, cherry-picked some things that she was going to consider while disregarding others. She bases her finding on really a misstatement and a misapprehension of the record that Mr. Sethi testified that he resigned from the position in July 2006 even though the term ended in June of 2006. That's not what he said. What he said is that he was arrested in June 2006, he did not return to the Gurdwara after that, and that in July, right before he came to the United States, he called them and asked them to terminate his position. The question was, he says I was officially to June 2006, however I put up my resignation in July. Sir, that doesn't make any sense. How could you resign a month after your position ended? And then he goes on to clarify. And she ignores the clarification. Moreover, she doesn't rely on... I don't understand the clarification. It doesn't look like a clarification to me. There's a clarification just subsequent to that question. And this is on page 757. 757, where he says, I was arrested in June 2006. Right. I carried out the same Latjana Dhar, but I did not visit the Sikh temple. And when I was about to come to America in July, I called them and told them to terminate. Right. But the question is, if he was officially only the Secretary from June to June or April of 2005 to June of 2006, why would he need to call them and tell them that he was terminating as Secretary in July if his term has ended in June? Well, it seems that the interpretation may be incorrect and that there was never any asking for clarification on that. Moreover, she didn't rely on the use of the... or focus on the use of the word officially in her decision. That was the Respondent's brief. And the Court cannot affirm on a basis that she did not, in fact, rely. Moreover, as you notice, next he says, I put up my designation in July. Designation isn't the word that we're looking for there either, which indicates that perhaps there were some transliteration problems. More... Do you want to save any time? I did save four minutes, didn't I? Yeah. That's coming out of your time right now. You're down to a minute and 30, 36, 35. Oh, then I will save four minutes. I will reserve the rest. Thank you. That's why I announced it. It's showing your total time. Okay. Thank you. I misunderstood. Good morning. Good morning. May it please the Court, my name is Greg Kelch and I represent the United States Attorney General. Before discussing the denial of Mr. Assetti's motion to reopen, I'd like to make a few remarks about the denial of his asylum application as the issues in these petitions are interrelated. Now, as you know, the asylum application was denied due to an adverse credibility determination. Not only were there discrepancies between Mr. Assetti's testimony and the documents he submitted, but his attempts to explain those discrepancies made it seem as though he was trying to conform his testimony to the documents. So, for example, the sad man letter. Mr. Assetti provided what purported to be a letter from Simrajit Singh, man himself. Now, when the immigration... Well, counsel for the appellant, when I said, at first he said, oh, it could be spelled both ways, but then said, oh, it must be a misspelling. Counsel for the appellant said we can't consider that he first said it could be spelled both ways and then came to the other. What's your response to that? Well, yes, of course the court can. I mean, that was his testimony in immigration court. He was provided an opportunity, he could be provided an opportunity to explain his testimony, but he can't simply change his story. Right, but the I.J. didn't cite that as the basis for the decision. Well, the immigration judge said that he has not credibly addressed the problems with this letter. That presumably would refer back to his testimony on this point where he is saying at one point you can spell the name M.A.N. Well, we had, she questioned a couple of different things, the amritsar, the question of when the party was founded and the spelling. Now, I have to say that I'm very, very troubled by the I.J.'s findings here because I think the I.J. has got exactly the right reasons and exactly the wrong conclusion. I don't see how anybody could look at this letter and think that M.A.N. is anything other than a typo. We've been doing this for a long time. The I.J.'s been doing it a whole lot more than I have and nobody's ever spelled it that way. It's clearly a typo. Why don't they just move on? Well, I guess the other question then is why didn't Mr. Sethi just say that if he said... That's the troubling part is why he would attempt to explain it in that way. And that is the problem. I mean, if he's providing documents to the court... But it's not his letter. He didn't type the letter. It seems like a silly explanation. And, Counsel, there is a case we found called Singh v. Gonzalez. It's actually a government brief. The Ninth Circuit number is 04-74795. And in that case there was the same issue. There was a letter from this party and Mon was spelled both ways. M-A-N-N and M-A-A-N. The fact that the judge's experience... She says, I've never seen this before. Well, the Justice Department has seen this before. And so I'm just wondering why... Assuming it's a typo or whatever it is, it's not a... You know, it's not a Germanic language we're talking about. It's wholly different. So if there's a typo... If she's wrong about that... I'll get to my point. I apologize. If the judge is wrong that this misspelling is not this scheme or it's just a mistake, doesn't this case end right there? Because it seems to me when I read that transcript so much of her decision was based on the spelling of this word. I guess our answer to that is that whereas the court is focusing on the typographical error in the document, what we want the court to focus on here and recognize is his discrepant testimony about that document. I mean, the immigration judge showed it to him and he said, you know, you can spell it either way. You can spell it M-A-A-N or M-A-N-N. It's not his letter, though. It's not one that he typed and then said, well, I spelled it that way because you can spell it either way. He's trying to offer an explanation for something that looks like it's obviously a typo. That is correct. And then, but he has to provide a credible explanation such that he can tell the immigration judge, I don't know why it is spelled that way. But counsel, in your career working for the department when there's a typo in a brief and a supervisor comes to you and says, well, Mr. Kelsch, where did this come from? You've never seen someone say, well, I don't know, maybe it was a Westlaw mistake, maybe my secretary and come up really quickly out of the top of your head come up with different explanations for a mistake? Well, Judge Owens, if there's a typographical error in something that I submit to my supervisor and she points it out to me, I say, yes, ma'am, that's a typographical error. Or if I don't know why that's in the brief, I say, I don't know. I can go find out. But I wouldn't just say, well, it means the same or there's some other word out there that I But you've never seen someone get a little bit flustered when confronted on a mistake? Whether Mr. The point is that Mr. Sethi shouldn't have been flustered. He should have been in immigration court providing truthful testimony to an immigration judge. But I guess that's the question here. I mean, the Ninth Circuit has reminded IJs, look, if there are discrepancies on dates or something like a typo, this misspelling, those types of issues do not equal someone being not credible. And when you deal with witnesses, real live witnesses, that happens sometimes. They're nervous. This is the first time this person's testified. And if the is wrong about one of her main concerns here, how can we uphold the adverse credibility finding? How do we know that the answer is wrong, by the way? How do we know that it can't be spelled both ways or that it's not a phonetic spelling? I'll give you an example. The Anuba City, the first elected Sikh official in the United States spells his last name M-A-A-N. Well, first of all, I would remind the Court that Mr. Sethi, the correct spelling is M-A-N-N and it's such an obvious mistake that his later counsel should have recognized it. So, I presume that we can all agree now that the correct spelling of this man's name is M-A-N-N. However, when Mr. Sethi is in immigration court, his job is not to try to sell the immigration judge on his documents or to conform his testimony to make it seem like it's consistent with the documents or to make the documents rise up to be more than they are. He just has to provide truthful, honest testimony to the immigration judge. And if there's a misspelling in his documents, he should say, well, that's a misspelling or that's a typographical error. The point, counsel, is it's still not his document. Now, the IJ might have said, well, no self-respecting head of the Shiromani Akali Dahl party would have allowed a document out with their name misspelled. In which case, you might say, this can't be for Mr. Mahn because he's misspelled his own name and nobody would sign that. And that would go to the credibility of the document. But I don't know how you can hold Mr. Sethi responsible for explaining a typo in a letter that he didn't prepare. Because it is not he's being held responsible for the typographical error in the document. It's for his explanation. Counsel, you're very brave to continue to hold the position because you've been under fire but you've done it with a great deal of grace. Let's suppose that I don't accept your argument. What impact does that have on the government's case? Well, there are other inconsistencies as well. For example... Okay. But if I thought that this letter should have been admitted and not excluded, doesn't that help support the credibility of Mr. Sethi? We quite frankly are unclear about Mr. Sethi's argument with regard to the documents being admitted and being not admitted. And the evidence   has  to the court is that Mr. Sethi has admitted these documents to address the Respondent's credibility or lack thereof. Only for credibility? We have no idea what she does. She only seems to use them against him. She doesn't seem to use them in his favor. Yes, we would agree with that. She does not cite these documents as proof. And what possible reason could there have been for excluding 7C and 7D? 7C, excuse me, I'm not familiar. Those are other documents. Those documents were notarized, they were original, they had an official stamp, and she excludes them. What possible reason could there be for excluding those documents? Your Honor, if I could look at my list of... That's the affidavit from his friend and the affidavit from his father, which would corroborate his story with regard to the torture and the arrests. I think the immigration judge's concern here is that, as we noted in our brief, she's got to rely on Mr. Sethi's testimony to determine whether he has a subjective fair perception. That may be. If you  subjective fair perception, why exclude these documents? What else do you have to do to get a document admitted in a court in the United States? Your Honor, I think that the immigration judge's concern here was simply that Mr. Sethi did not demonstrate a subjectively genuine fear of persecution because of the inconsistencies in his testimony. Even if those documents are admitted, she can give them limited weight. If she says she's not admitting them, there isn't any reason   make a determination about those documents. If she's saying why wouldn't the proper remedy be to vacate and remand, consider those, and then make a determination? And if these questions go to the credibility as to earlier events, I think Sethi's got some problems with the summer of 2006, but if these go to the credibility of his testimony about his credibility about the later events, she's using the events of 2006 to say because you lied about events in 2006, you lied about events in the 1990s. If he can bolster his case for why he was credible about events in the 1990s, doesn't the reverse also work? Well, presumably if he's not providing credible testimony in immigration courts about the events of 2006, one would presume that he's not being credible about any of the events. It doesn't always follow. Once a liar, always a liar. It doesn't help if you have been determined a liar, but a liar is not a liar.    doesn't help if you  been    but it doesn't help if you have been determined a liar, but it doesn't help if you have been determined a liar. It doesn't been determined a liar. If you have been
judges: Bybee, Callahan, Owens